**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Trust; Center for Biological Diversity; Sierra Club; Havasupai Tribe,<br><br>Plaintiffs,<br><br>v.<br><br>Michael Williams, Forest Supervisor, Kaibab National Forest; United States Forest Service, an agency in the U.S. Department of Agriculture,<br><br>Defendants,<br><br>and<br><br>Energy Fuels Resources (USA), Incorporated; EFR Arizona Strip LLC,<br><br>Defendants-Intervenors. | No. CV13-8045-PCT-DGC<br><br>**ORDER** |

This case arises out of the renewed operation of the Canyon Uranium Mine ("Canyon Mine"). Plaintiffs allege that Defendants U.S. Forest Service and Michael Williams, Supervisor of the Kaibab National Forest, violated environmental and historical preservation laws by allowing the mine to resume operations. Energy Fuels Resources (USA) Inc. and EFR Arizona Strip LLC (together, "EFR") have intervened as defendants on the ground that they own unpatented mining claims at Canyon Mine and conduct operations pursuant to a valid Plan of Operations ("Plan") approved by the Forest Service. Docs. 31, 35. Plaintiffs have filed a motion for a preliminary injunction

that seeks to halt mine operations. Doc. 36. The motion is fully briefed. For reasons that follow, the Court will deny the motion.[1]

**I.   Background.**

Canyon Mine is a breccia pipe uranium mine located in the Kaibab National Forest. The site occupies approximately 17 acres of surface land in Northern Arizona and is approximately six miles south of the Grand Canyon National Park boundary and 35 miles southeast of the Havasupai Reservation. AR 10596, 10628. After having conducted exploration activities on the site from 1978 to 1985, Energy Fuels Nuclear, Inc., ("EFN") submitted to the Forest Service a Plan for the Canyon Mine site that proposed the development of a uranium mine. AR 10594. After completing an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Forest Service issued a Record of Decision ("ROD") approving the Plan, with modifications, on September 26, 1986.

Red Butte, a prominent mesa located four miles south of Canyon Mine, is a sacred site to the Havasupai Tribe. AR 10605. The Tribe filed a lawsuit challenging the ROD on several grounds, including that the Forest Service's approval of the Plan violated its first amendment right to free exercise of religion at the Canyon Mine site. The Forest Service's decision was upheld by the District Court and Ninth Circuit. *See Havasupai Tribe v. United States*, 752 F. Supp. 1471 (D. Ariz. 1990), *aff'd sub. nom.*, *Havasupai Tribe v. Robertson*, 943 F.2d 32 (9th Cir. 1991).

Operations started under the Plan, but work was stopped and the mine was placed on standby status when uranium prices dropped in 1992. Doc. 39-4 at 12; AR 10594. All surface facilities for the mine had been constructed and the vertical underground shaft had reached approximately 50 feet. Doc. 39-4 at 12. Denison Mines ("Denison") acquired Canyon Mine from EFN in 1997. Doc. 39-4 at 12; AR 10594.

---

[1] Oral argument was scheduled for August 23, 2012, but the Court concluded that the parties' briefs were sufficient for the Court to make a fully informed decision. Accordingly, Plaintiffs' request for oral argument was denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1  Since the 1986 ROD, the National Historical Preservation Act ("NHPA"),
2  16 U.S.C. §§ 470 *et seq.*, which requires federal agencies to "take into account the effect
3  of the[ir] undertaking[s] on any district, site, building, structure, or object that is included
4  in or eligible for inclusion in the National Register," 16 U.S.C. § 470f, was amended to
5  define "historic properties" to include "[p]roperties of traditional religious and cultural
6  importance to an Indian tribe . . . [that] may be determined to be eligible for inclusion in
7  the National Register," 16 U.S.C. § 470a(d)(6).  Pursuant to that amendment, the Forest
8  Service determined in 2010 that Red Butte is eligible for inclusion in the National
9  Register of Historic Places as a traditional cultural property ("TCP").  *See* Doc. 39-6 at
10 54-55.  Canyon Mine is located within the Red Butte TCP boundary.  AR 10606.

11 On July 21, 2009, the Secretary of the Interior published notice of his intent "to
12 withdraw approximately 633,547 acres of public lands and 360,002 acres of National
13 Forest System lands for up to 20 years from location and entry under the Mining Law of
14 1872."  Notice of Proposed Withdrawal, 74 Fed. Reg. 35,887 (July 21, 2009) ("the 2009
15 Notice").  After completing an EIS, the Secretary issued a ROD (the "Withdrawal") on
16 January 9, 2012, "withdraw[ing] from location and entry under the Mining Law, subject
17 to valid existing rights, approximately 1,006,545 acres of federal land in Northern
18 Arizona for a 20-year period[.]"  AR 10310.  The EIS noted that the withdrawal area
19 included four mines with approved Plans that predated the 2009 Notice (including the
20 Canyon Mine), and assumed that mining operations would therefore occur in the
21 withdrawal area.  AR 10314-15.

22 On September 13, 2011, Denison advised the Forest Service that it intended to
23 resume mining operations at Canyon Mine under the existing Plan.  AR 8611.  The letter
24 stated that it was Denison's position "that no action is required by [the Forest Service] in
25 connection with Denison's resuming mining operations under the Plan."  *Id*.  In a follow-
26 up letter dated November 1, 2011, Denison confirmed that "the resumption of active
27 mining operations will not require any changes to Denison's previously approved mining
28 operations under the [Plan] and ROD."  AR 10241-44.  Thereafter, the Forest Service

1   requested that Denison postpone resuming mining activities while it conducted a mineral
2   examination to verify the validity of the Canyon Mine's mining claims.  Roberts, Decl.,
3   Doc. 59 at 1-7, ¶¶ 14-15.  Denison voluntarily agreed to postpone mining activities in
4   response to the Forest Service's request.  *Id.*, ¶ 16.

5         Forest Service mineral examiners evaluated the Canyon Mine mining claims and
6   issued a Valid Existing Rights Determination on April 18, 2012 ("VER Determination").
7   Doc. 39-4 at 8.  The Forest Service also released a Canyon Mine Review ("Mine
8   Review") on June 25, 2012.  AR 10593-637.  The review "concluded that no
9   modification or amendment to the existing [Plan] is necessary; that no correction,
10  supplementation, or revision to the environmental document is required; and that
11  operations at the Canyon Mine may continue as a result of no further federal
12  authorization being required."  AR 10592.

13        Following a corporate merger transaction, Denison was renamed EFR.  AR 10475.
14  The news release announcing the merger noted that "[s]haft sinking is expected to begin
15  at Canyon mine in the fourth quarter 2012, pending regulatory approval[.]"  AR 10478.
16  EFR resumed mining operations after the Forest Service completed the Mine Review.
17  Doc. 59 at 1-7, ¶ 17.

18        Plaintiffs' complaint asserts eight claims for relief:  (1) the Forest Service violated
19  NEPA by failing to supplement the 1986 EIS; (2) the Forest Service violated NEPA in
20  deciding not to supplement the 1986 EIS; (3) the Forest Service violated NEPA by
21  approving mining operations on lands subject to the Withdrawal; (4) the Forest Service
22  violated NHPA by approving mining operations on lands subject to the Withdrawal;
23  (5) the Forest Service violated NHPA by not completing a NHPA § 106 consultation as
24  required under 36 C.F.R. § 800.13(b)(1); (6) the Forest Service violated the Organic
25  Administration Act of 1897 and the National Forest Management Act ("NFMA") by
26  approving mining operations on lands subject to the Withdrawal; (7) the Forest Service's
27  VER Determination violated the Mining Law of 1872, the Federal Land Policy
28  Management Act ("FLPMA"), the Withdrawal, the Organic Administration Act of 1897,

and the Administrative Procedure Act ("APA"); and (8) the Forest Service violated its regulations and the APA when it decided not to modify the Canyon Mine existing Plan. Doc. 1.  Plaintiffs seek a preliminary injunction on claims three, four, and five.  Doc. 39.

Defendants have filed a motion to dismiss seven of Plaintiffs' eight claims under Rule 12(b)(1) on the following grounds:  (1) Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth claims do not challenge final agency action; (2) Plaintiffs' fourth claim is barred by res judicata; and (3) Plaintiffs' fourth claim is time-barred.  Doc. 71. Plaintiffs have filed a motion to stay briefing and consideration of the motion to dismiss to allow discovery on jurisdictional defenses.  Doc. 74.  Because Plaintiffs do not ask the Court to stay its consideration of the preliminary injunction motion, the Court will resolve that motion with this order.

## II.     Motion for Preliminary Injunction.

### A.     Legal Standard.

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  To obtain a preliminary injunction, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  The test includes a sliding scale.  If a plaintiff shows that the balance of hardships will tip sharply in his favor, he need not make as strong a showing of the likelihood of success on the merits – the existence of serious questions will suffice.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

### B.     Serious Questions and the Balance of Hardship.

To determine whether Plaintiffs can obtain a preliminary injunction by raising serious questions as opposed to showing a likelihood of success on the merits, the Court will first consider the balance of hardships.  Plaintiffs argue that they will suffer the following harms if the Court does not promptly enjoin operation of the Canyon Mine:

1  (1) deprivation of an opportunity to participate in the procedural processes of NEPA and
2  NHPA "at a time when such participation is calculated to matter" (Doc. 39 at 27 (ellipses
3  omitted) (quoting *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177,
4  1189 (N.D. Cal. 2009))); (2) injury to the Havasupai Tribe's traditional cultural and
5  religious interest in the Red Butte TCP (*id.*); and (3) injury to Plaintiffs' enjoyment of the
6  Kaibab National Forest and the Grand Canyon National Park because the mineshaft will
7  drain perched aquifers and degrade regional springs (*id.* at 28-29).  Although the Forest
8  Service has previously considered many environmental, cultural, and religious interests
9  with respect to the Canyon Mine, and continues to do so (*see* Doc. 53 at 32-33), Plaintiffs
10 have shown a likelihood of irreparable injury.  *See, e.g.*, *Los Padres Forestwatch v. U.S.
11 Forest Serv.*, 776 F. Supp. 2d 1042, 1051-52 (N.D. Cal. 2011) (finding that Plaintiff will
12 suffer procedural and substantive environmental harm due to alleged NEPA violation);
13 *Save Strawberry Canyon*, 613 F. Supp. 2d at 1887 (finding "absent an injunction,
14 plaintiff is highly likely imminently to suffer irreparable injury from the alleged NEPA
15 breach.").

16 　　　　The Court notes, however, that Plaintiffs significantly delayed seeking injunctive
17 relief.  The Forest Service issued a press release announcing that it had completed the
18 Mine Review on June 25, 2012.  AR 10638-39.  On the same day, the Forest Service
19 notified Plaintiffs Center for Biological Diversity and Havasupai Tribe of its Mine
20 Review decision.  AR 10642, 10690-91.  Plaintiffs did not file suit until March 7, 2013
21 (Doc. 1), and did not seek a preliminary injunction until April 24, 2013 (Doc. 36).  This
22 unexplained ten-month delay in seeking injunctive relief "implies a lack of urgency and
23 irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374,
24 1377 (9th Cir. 1985).

25 　　　　Defendant-Intervenors identify the following harms that will result from an
26 injunction of mine operations:  (1) they "will be forced to shut down [their] active
27 operations and return the Mine to ready-standby status" at a cost of "at least $945,000"
28 per year (Doc. 55 at 27 (citing Roberts Decl., Doc. 59, ¶ 29)); (2) they may "lose most of

[their approximately $3.5 million] investment in preparing the Mine for active operations since the price of uranium increased in recent years" (*id.* (citing Doc. 59, ¶ 30)); (3) they may "lose the opportunity to capitalize on current uranium market prices and generate any of [their] $86 million in expected revenue" (*id.* (citing Doc. 59, ¶ 31)); (4) "the value of [their] unpatented mining claims . . . will be reduced or eliminated" (*id.* (citing Doc. 59, ¶ 31)); and (5) they "will be forced to lay off all twenty-two employees," and replacing the employees "would require at least eight to twelve months, due to their very specialized skill and knowledge base" (*id.* (citing Doc. 59, ¶¶ 32-34)). Although the Court finds the alleged effect on the value of the mining claims and the alleged loss in expected revenue to be somewhat speculative, *see Cottrell,* 632 F.3d at 1136-39, the Court concludes that Defendant-Intervenors have demonstrated a likelihood of significant harm. *See Amoco Prod. Co v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (noting that "the oil company petitioners had committed approximately $70 million to exploration to be conducted during the summer of 1985 which they would have lost without chance of recovery had exploration been enjoined" and reversing the entry of a preliminary injunction).

The harm identified by each side of this litigation is serious. Potential injuries to Plaintiffs are procedural, religious, and aesthetic, while potential injuries to Defendants are financial. Although persons can differ on the respective importance of these kinds of injuries, the question is not which side's potential injury is greater, but whether the balance of hardships "tips sharply" in Plaintiff's favor. *Alliance for the Wild Rockies*, 632 F.3d at 1131. Given the significant financial losses that might be caused to Defendant-Intervenors by an injunction, as well as Plaintiffs' delay in seeking injunctive relief, the Court cannot conclude that the balance tips "sharply" in Plaintiffs' favor. As a result, Plaintiffs cannot obtain a preliminary injunction by raising serious questions; they must show a likelihood of success on the merits.

  **C.**  **Likelihood of Success – Claims Three and Four.**

Claim three alleges that the Forest Service violated NEPA by failing to prepare

environmental assessments or impact statements regarding the VER Determination. Claim four alleges that the Forest Service violated NHPA by failing to initiate and complete a § 106 consultation in connection with the VER Determination. Defendants argue that Plaintiffs' claims fail because they do not challenge final agency action, a jurisdictional requirement under the APA. Doc. 53 at 23. Defendant-Intervenors argue that Plaintiffs have not shown that they are adversely affected or aggrieved by the VER Determination because no affidavits refer to the VER Determination, let alone complain of it. Doc. 55 at 12-13. Additionally, both Defendants and Defendant-Intervenors argue that the procedural requirements of NEPA and NHPA were not triggered because the VER Determination does not constitute "major Federal action" or a federal "undertaking." Doc. 53 at 22-28, 30-31; Doc. 55 at 13-18. The Court will consider the jurisdictional argument first.

Because neither NEPA nor NHPA authorizes a private right of action, *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005), Plaintiffs' third and fourth claims challenge the VER Determination under the judicial review provisions of the APA, 5 U.S.C. §§ 702-706; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). To obtain judicial review under the APA, Plaintiffs must establish that (1) that there has been a final agency action adversely affecting them, and (2) they have suffered legal wrong or their injury falls within the "zone of interests" of NEPA and NHPA. *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 861 (9th Cir. 2005); *see also San Carlos Apache Tribe*, 417 F.3d at 1096.

"'[F]inal agency action' is a jurisdictional requirement imposed by [the APA]." *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) (citing 5 U.S.C. § 704); *see also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008). For an agency action to be final, it must: (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations and citations omitted); *see also Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."). Both conditions must be met for the agency's action to be considered final, and Plaintiffs bear the burden of proving that jurisdiction is proper. *See Defenders of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1099 (D. Ariz. 2009). Because claims three and four both challenge the VER Determination, Plaintiffs must demonstrate that the VER Determination satisfies the *Bennett* final agency action test.

### 1. Consummation of Decisionmaking.

To satisfy the first prong of *Bennett*, the action must be the agency's "last word on the matter," *Or. Natural Desert Ass'n*, 465 F.3d at 984 (internal quotation marks omitted), and "not . . . of a merely tentative or interlocutory nature," *Bennett*, 520 U.S. at 178. In examining the agency action, courts ask whether "[i]t is devoid of any suggestion that it might be subject to subsequent revision or further agency consideration or possible modification." *Fairbanks N. Star Borough*, 543 F.3d at 592 (internal quotation marks and citations omitted).

Plaintiffs assert that the VER Determination is the Forest Service's final word on the validity of the Canyon Mine mining claims and that it constitutes final agency action because the Forest Service "fails to identify what later process would follow the VER Determination for Canyon Mine." Doc. 63 at 14. Defendants disagree, and argue that the VER Determination "is an internal document that the agency uses as a tool in later decisionmaking processes or adjudications" (Doc. 53 at 22-23), and that it cannot constitute final agency action because "[a]dditional processes would be needed before the Forest Service could revoke or invalidate the Plan, even if as a first step the VER Determination had reached a finding of invalidity" (*id.* at 23).

The VER Determination confirmed that the Canyon Mine claims were valid at the time of the Withdrawal. Doc. 39-4 at 8; Doc. 39-6 at 1. According to the Forest

1  Service's handbook, a VER Determination is not binding; it is a "statement of belief and
2  not [a] formal determination." AR 7311. This is because "[n]o adjudicative power has
3  been given to the Forest Service." *Id.* Even though a claim "may lack the elements of
4  validity and be invalid in fact, . . . it must be recognized [by the Forest Service] as a claim
5  until it has been finally declared invalid by the Department of the Interior or Federal
6  courts." AR 7280; *see also* AR 7312 (indicating that the mineral examination report
7  "will be the basis for a decision on whether or not to contest the claim," but that it is the
8  Department of Interior's role to rule on claim validity). The U.S. Bureau of Land
9  Management ("BLM"), an agency within the U.S. Department of Interior, decides
10 whether to contest a mining claim. 43 C.F.R. § 3809.100(a); *see also* AR 7691 ("The
11 Department of Interior (BLM) is the adjudicator of mining claims for the federal mineral
12 estate including minerals located on National Forest System Lands."). The Forest
13 Service is an agency within the U.S. Department of Agriculture. *See generally* AR 7691.
14 In any BLM action to challenge mining claims, a VER Determination would serve only
15 as evidence. *See* AR 5901 ("the mineral report can be a powerful tool when submitted
16 into evidence at a contest hearing.").

17 This discussion suggests that the VER Determination is the last action the Forest
18 Service can take on the validity of the Canyon Mine mining claims. Because no further
19 Forest Service action can be expected, the first prong of the *Bennett* finality test is
20 satisfied. *Fairbanks N. Star Borough*, 543 F.3d at 593.

21 **2.  Legal Consequences.**

22 In determining whether the agency action is "one by which rights or obligations
23 have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at
24 177-78, courts examine whether the action "impose[s] an obligation, den[ies] a right, or
25 fix[es] some legal relationship," *Or. Natural Desert Ass'n*, 465 F.3d at 986-87 (citations
26 and emphasis omitted); *see also Cabaccang v. U.S. Citizenship and Immigration Servs.*,
27 627 F.3d 1313, 1316 (9th Cir. 2010) ("The imposition of an obligation or the fixing of a
28 legal relationship is the indicium of finality in the administrative process."). As indicated

1  above, the VER Determination has no binding effect.  It is a "statement of belief and not
2  [a] formal determination."  AR 7311.

3        Plaintiffs argue, nonetheless, that the VER Determination had legal consequences
4  for the Canyon Mine because it was a prerequisite for mining operations to resume.
5  Doc. 63 at 14-15   Plaintiffs point to an email from Forest Service archeologist/tribal
6  liaison Michael Lyndon stating that he was told by a Forest Service geologist "that
7  Denison will not be doing any 'shaft sinking' at the site until the minerals exam is
8  complete."   AR 10348.   From this, Plaintiffs argue that "EFN [sic] recognized that
9  mining could not proceed without the VER Determination."  Doc. 63 at 14.  Additionally,
10 Plaintiffs submit that "[i]t is Forest Service policy (FSM 2803.5) to only allow operations
11 on mining claims within a withdrawal that have valid existing rights (VER)."  Doc. 63 at
12 16 (emphasis omitted) (citing Doc. 39-6 at 4).[2]

13       Defendants argue that the VER Determination is an internal document that the
14 agency uses as a tool in later decision-making processes or adjudications, but has no legal
15 effect by itself.  Doc. 53 at 22-23.  Defendants point to the BLM Handbook – guidance
16 that the Forest Service purports to follow (AR 7691) – which provides that a VER
17 Determination serves only two functions:  (1) "a professionally prepared and technically
18 reviewed report on the merits of the mining claim"; and (2) "a powerful tool when

---

[2] FSM 2803.5 is not part of the record in this case, but assuming Plaintiffs describe it accurately, the policy does not necessarily render the VER Determination one that has legal effect, by which rights or obligations have been determined, or from which legal consequences will flow.  Forest Service policy is to act consistently with BLM directions with respect to mining claims (AR 7691), and it is not clear that the BLM would require a validity determination before mining operations could resume or continue in a withdrawal area under a valid Plan approved before the withdrawal.  *See* AR 11600 (H-3809-1 – Surface Management Handbook, § 8.1.1.1: "A Notice or Plan submitted before the withdrawal is not exempt from the validity determination requirement *if the BLM has not accepted or approved it at the time of the withdrawal*." (emphasis added)); *see also* AR 11602 (H-3809-1 – Surface Management Handbook, § 8.1.5:  "Accepted Notices or approved Plans of Operations that were in place prior to the withdrawal or segregation date are not subject to the mandatory valid existing rights determination procedures at 43 C.F.R. § 3809.100(a).  These operations may continue as accepted or approved and do not require a validity examination unless or until there is a material change in the activity. . . . The BLM still retains the discretion to assess the validity of any mining claim on any lands that the BLM administers when it would be in the public interest and may choose to do so when there are ongoing operations in withdrawn or segregated lands.").

- 11 -

1   submitted into evidence at a contest hearing." AR 5901. The Court agrees with
2   Defendants. The limited purpose of a VER Determination is confirmed by Forest Service
3   policy providing that the mineral report is "the basis for a decision on whether or not to
4   contest the claim." AR 7312. Thus, although the VER Determination may constitute the
5   Forest Service's view of the Canyon Mine claims' validity, "[t]his expression of views
6   lacks the 'status of law or comparable legal force.'" *Fairbanks N. Star Borough*, 543
7   F.3d at 594 (citing *Ukiah Valley Med. Ctr.*, 911 F.2d at 264). The Forest Service did "not
8   alter the physical reality or the legal standards used to assess that reality simply by
9   opining" that the mining rights under the Plan were valid. *Id.* at 595 (citing *Nat'l Ass'n*
10  *of Home Builders v. Norton*, 415 F.3d 8, 16 (D.C. Cir. 2005) (agency action that "left the
11  world just as it found it . . . cannot be fairly described as implementing, interpreting, or
12  prescribing law or policy") (internal quotation marks omitted)). The Court also agrees
13  with Defendant-Intervenors that in issuing the VER Determination, the Forest Service "is
14  not approving or denying a privilege (such as a permit) but is verifying only 'whether
15  rights conferred by Congress under the Mining Law have come into existence.'" Doc. 55
16  at 14 (quoting *Wilderness Soc.*, 824 F. Supp. at 953) (brackets omitted). The VER
17  Determination did not augment any rights or obligations pertaining to the Canyon Mine,
18  but simply recognized the state of those existing rights and obligations and "left the world
19  just as it found it." *See Nat'l Ass'n of Home Builders*, 415 F.3d at 16.

20      As a result, the Court concludes that the VER Determination does not "impose an
21  obligation, deny a right, or fix some legal relationship," *Ukiah Valley Med. Ctr.*, 911 F.2d
22  at 264, but instead is more advisory – it expresses an opinion as to the status of the
23  Canyon Mine claims. The VER Determination may have had the practical effect of
24  paving the way for mining operations to resume, but a practical effect is not synonymous
25  with a legal consequence. *See Fairbanks N. Star Borough*, 543 F.3d at 596-96 (noting
26  that it is erroneous to "conflate[] a potential *practical* effect with a *legal* consequence
27  (emphasis in original)). Thus, although the first *Bennett* requirement is satisfied,
28  Plaintiffs have not shown that they are likely to succeed in satisfying the second

requirement.  Because Plaintiffs have not shown that the Court will have jurisdiction to review their third and fourth claims under the APA, they have not shown that they are likely to succeed on the merits of these claims.  The Court need not address the parties' other arguments on these claims.

### D. Likelihood of Success – Claim Five.

Claim five alleges that the Forest Service violated NHPA by permitting mining operations to resume at the Canyon Mine without having reopened and completed a § 106 consultation to assess the mine's likely effects on the Red Butte TCP.  Specifically, the claim alleges that the Forest Service violated NHPA by determining in the Mine Review that 36 C.F.R. § 800.13(b)(3) applied and not § 800.13(b)(1).  Doc. 1, ¶¶ 94-98; Doc. 39 at 17-20.  Before considering the likelihood of success on the merits of this claim, the Court will determine whether the claim challenges final agency action – a jurisdictional requirement.

#### 1. Final Agency Action.

The fifth cause of action does not appear to challenge any agency action, let alone final agency action.  From the complaint and Plaintiffs' briefing, the Court could construe the claim as challenging the Forest Service's decision to apply 36 C.F.R. § 800.13(b)(3) and not (b)(1), but this determination is not "agency action" for APA judicial review purposes.  *See Lujan*, 497 U.S. at 882 ("The meaning of 'agency action' for purposes of § 702 is set forth in 5 U.S.C. § 551(13), see 5 U.S.C. § 701(b)(2) ("For the purposes of this chapter . . . 'agency action' ha[s] the meaning[g] given . . . by section 551 of this title'), which defines the term as 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act,' 5 U.S.C. § 551(13).")  Because NHPA, like NEPA, is a "stop, look, and listen" statute, *see San Carlos Apache Tribe*, 417 F.3d at 1097-98, a § 106 consultation is like an EIS in that both are preliminary and procedural agency actions, and accordingly the decision to not complete a § 106 consultation is reviewable under the APA only if review is also sought of a final agency action.  5 U.S.C. § 704; *see also Northcoast Envtl. Ctr. v. Glickman*,

- 13 -

1   136 F.3d 660, 670 (9th Cir. 1998) ("There is no reason plaintiffs cannot challenge the sufficiency of an agency EIS when a discrete agency action is called for."). Plaintiffs have not established that their fifth cause of action challenges final agency action, and thus the Court finds that Plaintiffs are not likely to succeed on the merits of this claim. Because this issue was not raised by the parties, the Court will also address Plaintiffs' likelihood of success on the merits of claim five.

### 2. Merits of Claim Five.

The Court will rely on NHPA regulations, promulgated by the Advisory Council on Historic Preservation ("ACHP"), to guide its review of Defendants' compliance with NHPA. *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 894 (9th Cir. 2002) ("We rely on NEPA regulations, promulgated by the Council on Environmental Quality ("CEQ"), to guide our review of an agency's compliance with NEPA." (citing *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir.1998)); *see also Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 372 (1989) (holding that CEQ regulations are entitled to substantial deference). To show a likelihood of success on the merits of their fifth cause of action, Plaintiffs must establish that the Forest Service's decision to comply with 36 C.F.R. § 800.13(b)(3) rather than (b)(1) was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(1)-(2)(A). This is a "highly deferential" standard of review. *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007).

The § 800 regulations provide federal agencies with guidance in implementing and engaging in the NHPA § 106 consultation process. Section 800.13 deals with post-review discoveries. In the case of such a discovery, federal agencies must engage in a full § 106 consultation process "[i]f the agency has not approved the undertaking or if construction on an approved undertaking has not commenced." See 36 C.F.R. § 800.13(b)(1). But if the agency "has approved the undertaking and construction has commenced," § 800.13(b)(3) instructs the agency to engage in an expedited review. Significantly, neither (b)(1) nor (b)(3) describes the scenario the Forest Service faced

here – the undertaking had been approved, construction had commenced, operations ceased, and, under the prior undertaking, operations were set to resume.

The Forest Service acknowledged in the Mine Review that its prior NHPA § 106 consultation did not address the Red Butte TCP because at the time Red Butte was not eligible for listing on the National Register. AR 10602-03. The Forest Service determined that the Red Butte TCP "could be considered a newly 'discovered' historic property" because it "was only recorded as a TCP and evaluated as eligible for inclusion on the [National Register] after the ROD but before the project has been completed." AR 10603. Turning to 36 C.F.R. § 800.13, the Forest Service determined that paragraph (b) applied "[b]ecause there was no prior planning for inadvertent discoveries during the EIS analysis." AR 10602.

Because "construction for the Mine has commenced," the Forest Service determined that (b)(3) applied. *Id.* The Forest Service acknowledged that "[t]he Canyon Mine project is a somewhat unusual situation in that the Section 106 process was completed more than 20 years ago, but there was a long period of inactivity." AR 10603. Additionally, the Forest Service noted that "it is unlikely that there can be an adequate discussion or response within [48 hours] . . . [n]evertheless, the current situation seems to fall within the intent of 26 C.F.R. 800.13.b, and consulting with the tribes to seek reasonable ways to minimize the effects would be prudent." AR 10603-04. The Forest Service notified the Havasupai Tribe and other area tribes, the Arizona State Historic Preservation Office ("SHPO"), and ACHP of its determination to proceed under § 800.13(b)(3). *See* AR 10643-44, 10690-91, 10737-38, 10784-85, 10831-32, 10878-79, 10925-26, 10972-73, 11019-20, 11066-67, 11113-14, 11160-61, 11207-08, 11254-55.

Plaintiffs argue that "before construction recommenced" (Doc. 39 at 18-19 (emphasis omitted)), the Forest Service was required to engage in a complete § 106 consultation in accordance with § 800.13(b)(1)'s mandate. But (b)(1) does not say "recommenced." Plaintiffs also argue that (b)(3) applies only if "'construction' is, in fact, occurring" (Doc. 39 at 17), and submit that the provision serves as an emergency

measure to ensure historic properties are not inadvertently damaged during project implementation (id. at 18). Plaintiffs contend that because construction was not ongoing at Canyon Mine, the process outlined in § 800.13(b)(3) does not logically apply. Instead, Plaintiffs argue that § 800.13(b)(1) applies because construction at Canyon Mine had not yet commenced when Denison revealed its intent to resume mining operations. Doc. 39 at 18. In support of their argument, Plaintiffs submit that both ACHP and SHPO advised the Forest Service that § 106 consultation was necessary and that it was appropriate to proceed under § 800.13(b)(1) rather than § 800.13(b)(3).

In a letter dated August 1, 2012, ACHP informed the Forest Service that it ought to proceed under § 800.13(b)(1), and not (b)(3), and complete a full § 106 consultation. AR 11334-36. ACHP restated this opinion in a letter dated February 6, 2013. AR 12346-47. Plaintiffs argue that ACHP's interpretation of its regulations is entitled to substantial deference. Doc. 39 at 19. The Court does not agree. ACHP's opinion is less an interpretation of its regulation than it is an opinion as to how the regulation applies to a particular factual scenario. Moreover, Defendants submit that ACHP has subsequently determined that (b)(1) did not apply. Doc. 53 at 29-30 (citing Doc. 53-4, ¶¶ 4-5, 8). Regardless of the resolution of this factual dispute, Plaintiffs have not demonstrated that ACHP's interpretation of its own regulation is entitled to substantial deference under *Auer v. Robbins*, 519 U.S. 454, 461 (1997). The regulation is not ambiguous, and Plaintiffs have presented no evidence – legislative history or otherwise – supporting ACHP's conclusion that "[t]he intent of Section 800.13(b)(3) is to provide an expedited review process where construction activities have begun and would be ongoing[.]" *Id*. The text of the regulation does not refer to "ongoing" construction. Section 800.13(b)(3) plainly applies where "construction has commenced" and (b)(1) where "construction . . . has not commenced." See 36 C.F.R. § 800.13(b). Judicial deference to ACHP's statement in the letters would permit ACHP "to create de facto a new regulation" on the issue of post-review discoveries after an undertaking has been approved and construction is set to recommence. *See Christiansen v. Harris Cnty.*, 529 U.S. 576, 587-88 (2000).

Notes from a telephone call indicate that SHPO considered the resumption of mining operations to be a "new undertaking" (Doc. 39-7 at 54), and that it was necessary to complete a § 106 consultation (*id.*). Plaintiffs do not identify the significance of SHPO's opinion, and the Court cannot find that it is of any more significance than ACHP's letters.

In summary, because it appears that the plain language of § 800.13(b)(3) applies to this case, the Court concludes that Plaintiffs are not likely to succeed in showing that the Forest Service's decision to comply with that provision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(1)-(2)(A).

### E. Conclusion.

Plaintiffs have not shown that they are likely to succeed on the merits of claims three, four, or five, the Court therefore will deny their request for preliminary injunction. The Court need not address the remaining preliminary injunction requirements. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 906 n.15 (9th Cir. 2007).

**IT IS ORDERED** that Plaintiff's motion for preliminary injunction (Doc. 36) is **denied**.

Dated this 9th day of September, 2013.

David G. Campbell
United States District Judge