IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Trust; Center for Biological Diversity; Sierra Club; and Havasupai Tribe,<br><br>Plaintiff,<br><br>v.<br><br>Michael Williams, Forest Supervisor, Kaibab National Forest; and United States Forest Service, an agency in the U.S. Department of Agriculture,<br><br>Defendant.<br><br>Energy Fuels Resources (USA) Inc. and EFR Arizona Strip LLC,<br><br>Defendant-Intervenors. | No. CV13-8045 PCT DGC<br><br>**ORDER** |

Plaintiff has filed a motion to complete or supplement the administrative record. Doc. 91. The motion has been fully briefed. Doc. 95, 98. Neither party has requested oral argument. The motion will be denied without prejudice.

**I.    Legal Standard**

Judicial review of agency action is generally limited to review of the administrative record, and the task of the reviewing court is to apply the appropriate standard of review under the Administrative Procedures Act based on the record the agency presents to the reviewing court. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989) (citing *Friends of the*

*Earth v. Hintz,* 800 F.2d 822, 828 (9th Cir.1986), and *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985)). The administrative record consists of "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citing *Hodel*, 840 F.2d at 1436). The focal point for judicial review "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Nevertheless, certain circumstances justify expanding judicial review beyond the record submitted by the agency. *Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982). Those circumstances include: (1) when necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) when the agency has relied on documents not in the record, (3) when necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). "It is the plaintiffs' burden to demonstrate that one or more of these exceptions apply." *Parravano v. Babbitt*, 837 F. Supp. 1034, 1039 (N.D. Cal. 1993) *aff'd*, 70 F.3d 539 (9th Cir. 1995).[1]

Plaintiff has asserted eight claims related to the Forest Service's determination that Valid Existing Rights (VERs) existed at the Canyon Mine, exempting it from the withdrawal of over one million acres from eligibility for mining under the 2008 Grand

---

[1] In their reply brief, Plaintiffs argue that this case alleges a failure to act rather than a challenge to a final agency action, and that a different standard applies to their motion to supplement. They cite *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002), which held that "generally judicial review of agency action is based on a set administrative record. However, when a court considers a claim that an agency has *failed* to act in violation of a legal obligation, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." (Emphasis in original.) Because Plaintiffs made this argument for the first time in their reply brief, the Court will not consider it. *See Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837 n. 6 (9th Cir.2004); *Gadda v. State Bar of Cal.,* 511 F.3d 933, 937 n. 2 (9th Cir.2007).

1  Canyon Watersheds Protection Act (hereinafter "the Withdrawal"). Doc. 1. Plaintiffs'
2  specific claims include that Defendant Forest Service failed to prepare a Supplemental
3  Environmental Impact Statement ("EIS") under the National Environmental Policy Act
4  ("NEPA") or conduct a Section 106 review under the National Historic Preservation Act
5  ("NHPA") despite changes and new information relevant to environmental and historic
6  preservation concerns. Doc. 1 at 24-30. Plaintiffs also claim that the VER determination
7  on lands subject to the Withdrawal violates a series of federal laws and implementing
8  regulations, including NEPA, NHPA, the APA, the 1897 Organic Act, and the National
9  Forest Management Act. *Id*.

10  Given these claims, the only exception under which the Court could allow
11  additions to the record would be the first: to enable the Court to determine "whether the
12  agency has considered all relevant factors and has explained its decision." *Ctr. for*
13  *Biological Diversity,* 450 F.3d at 943. While this exception provides an avenue for
14  expanding an administrative record, the broad language of the exception must be applied
15  cautiously to avoid swallowing the rule. *Johnson*, 674 F.2d at 794. Supplementation of a
16  record will not be allowed whenever a Plaintiff, in an attempt to convince a court that an
17  agency made an unwise choice, argues that the agency should have considered other
18  factors. *See, e.g.*, *Asarco Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980
19  ("[C]onsideration of the evidence to determine the correctness or wisdom of the agency's
20  decision is not permitted[.]"). And supplementation of a record will not be permitted
21  merely to create a fuller record or supply background information. *Hintz*, 800 F.2d at 829
22  ("The discovery sought by the appellants might have supplied a fuller record, but
23  otherwise does not address issues not already there."). Rather, the moving party must
24  make a viable argument that failure to supplement the record will "effectively frustrates
25  judicial review." *Hodel*, 840 F.2d at 1436.

26  **II.   Discussion.**
27      **A.   Baseline Data.**
28  Plaintiffs claim Defendants have failed to include documents regarding baseline

- 3 -

radiological monitoring that should have begun at least one year before mining operations resumed at Canyon Mine. Doc. 91 at 5. Plaintiffs allege that the requirement in the 1986 FEIS that a "preoperational baseline data collection program will last one year prior to ore production and will involve background measurements of direct gamma radiation, radon gas and progeny concentrations and radioactivity concentrations in air, soil and water," indicates such documents should exist. AR 527. Plaintiffs assert that "[t]here are no documents in the record revealing baseline radiological monitoring," Doc. 91 at 5, and that collection of this data "should have occurred," Doc. 98 at 5. According to Plaintiffs, had collection occurred and been considered, the Forest Service's 2012 VER determination and its Canyon Mine Review in 2012 "may have netted different results." Doc. 98 at 5.[2]

Defendants claim that because ore production was not slated to begin until 2015, this baseline data collection has not yet begun. Doc. 95 at 6. Defendants argue that it is inappropriate to supplement the record with baseline data that does not exist. Doc. 95 at 6.

Plaintiffs have not shown, and do not argue, that this baseline data exists. They instead argue that it *should* exist. Doc. 98 at 5. The Court cannot compel Defendants to supplement the record with data or documentation that do not exist. Plaintiffs will be free to argue on the merits that the Defendants should have required the data to be collected before making the decisions challenged in this case, but they have provided no grounds for supplementing the record with baseline data

**B.     Springs Data.**

Plaintiffs claim that incomplete groundwater monitoring data for Blue Springs, Havasu Springs, and Indian Gardens was included in the record. Doc. 91 at 5. Plaintiffs argue that, under the 1986 FEIS, springs data was to be collected every six months, and

---

[2] Specifically, Plaintiffs claim that, in making the VER determination, the Forest Service had to conclude that the mining claims were so profitable as to be marketable, and that the Forest Service failed to consider the costs of environmental remediation and costs of compliance with environmental laws. Doc. 1 at 31-32. In the original FEIS, this monitoring data was to be considered as part of subsequent mitigation, and therefore should have been accounted for in this profitability determination.

- 4 -

that all such data should have been included in the record. Doc. 91 at 5, citing AR 588. Plaintiffs direct the Court to springs monitoring data that does exist in the record at Supp. AR 12446 (from 1985), 12471 (from 1986), 12498 (from February, 1987), and 12510 (from April 1987).

Defendants respond that sufficient groundwater monitoring data is included in the record because samples taken at the time of the Forest Service's approval are included and additional data "has yet to be collected." Doc. 95 at 6. They also argue that "incremental supplementation or clarifications on issues already in the record" is not part of the scope of review. *Id.*

Defendants also direct the Court to documentation demonstrating that springs testing did in fact occur in 1988, 1989, and 1994, even though the data from that monitoring is not in the record. *See, e.g.,* AR 5823, 5858, 5955-56. While the Court is conscious of the general premise that the administrative record is limited to material that was considered by the agency in its decision, Plaintiff's claim that this information exists is supported by Defendant's own disclosure and citations. AR 12446, 12471, 12498, 12510.

Nevertheless, Plaintiffs bear the burden of showing that failure to include this data to explain agency action "effectively frustrates judicial review." *Hodel*, 840 F.2d at 1436. Plaintiffs make no such argument. They instead assert simply that the data should be included to the extent it exists. Doc. 91 at 5; Doc. 98 at 5-6. As noted above, cautious application of the first exception to the record requirement dictates that supplementation not be allowed merely to create a fuller record. *Hintz*, 800 F.2d at 829.

**C.     Expanded Monitoring Resulting from Perched Aquifer.**

Plaintiffs allege that perched aquifers were encountered while digging the mine shaft and that documents detailing those encounters should be part of the record. Doc. 91 at 5. Plaintiffs argue that these encounters with perched aquifers should have triggered additional groundwater monitoring, and that data from that monitoring should be part of the record. Doc. 91 at 5.

Defendants respond that only the Redwall-Muav aquifer had to be monitored and that there was no trigger under the FEIS related to smaller perched aquifers. Doc. 95 at 7. Defendants argue that "the record need not be supplemented with expanded monitoring information that does not exist and is not required." Doc. 95 at 7.

Plaintiffs have not shown that the monitoring data actually exist, and additional data must exist before they can be included in the record. Moreover, Plaintiffs have not shown that the absence of such data will frustrate judicial review.

### D. Monitoring Well Data.

Plaintiffs seek underlying data obtained from the Canyon Mine well that supports the 2010 USGS Report that characterized the well's concentrations of uranium as the "highest" levels encountered. Doc. 91 at 6. Defendants assert that the Forest Service does not possess this data, did not ask for it (Doc. 95-1 at ¶ 4), did not rely on it in reaching a decision (Doc. 95 at 7), and that the data therefore is not properly included in the record.

It appears that this data does in fact exist, but the USGS Report is in the record (AR 8147-8505), the Report includes uranium concentrations obtained from the underlying data, and Plaintiffs do not explain why the Report is insufficient or what additional insight might be gleaned from the underlying data. As the Ninth Circuit has held, courts need not, in the interest of a fuller record, supplement an administrative record with information related to issues already raised in the record. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443,1451 (9th Cir. 1996); *Hintz*, 800 F.2d at 829.

### E. USGS Study Plan.

Plaintiffs argue that the recent study plans developed by the USGS and Forest Service to monitor biological, air, and water resources should be included because they contain data obtained from the Canyon Mine monitoring well, mine shaft, and wastewater plans. Doc. 91 at 6-7. Defendants argue that the plans were not developed until April 2013, after the agency action challenged in this lawsuit. Doc. 95 at 8.

Plaintiffs may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ctr. for Biological Diversity*, 450 F.3d at 943 (citing *Ass'n of Pac. Fisheries v. EPA,* 615 F.2d 794, 811-12 (9th Cir.1980)). The Court will not order inclusion of study plans that post-date the decision in this case.

**IT IS ORDERED** that Plaintiffs' motion (Doc. 91) is **denied**.

Dated this 16th day of December, 2013.

David G. Campbell
United States District Judge