1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9   Grand Canyon Trust, et al.,                    No. CV-13-08045-PCT-DGC

10                          Plaintiffs,             **ORDER**

11  v.

12  Michael Williams, et al.,

13                          Defendants.

14

15          Defendants have filed a partial motion to dismiss.  Doc. 71.  The motion is fully

16  briefed (Docs. 118, 120, 123), and the Court heard oral argument on August 1, 2014.  For

17  the reasons stated below, the Court will deny the motion.

18  **I.      Background.**

19          This case arises out of renewed operations of the Canyon Uranium Mine ("Canyon

20  Mine").  The Canyon Mine is located six miles south of Grand Canyon National Park in

21  the Kaibab National Forest, and four miles north of Red Butte, a religiously significant

22  site for Plaintiff Havasupai Tribe.  Doc. 115, ¶¶ 2, 49.

23          In 1984, Energy Fuels Nuclear ("EFN") proposed to develop two unpatented

24  mining claims in the area.  *Id*., ¶ 29.  In 1986, the Forest Service, after preparing an

25  Environmental Impact Statement ("EIS"), issued a Record of Decision ("ROD")

26  approving a Plan of Operations for the mine.  *Id*., ¶ 30.  Several administrative appeals

27  were filed, and the Deputy Regional Forester and Chief of the Forest Service each

28  affirmed the ROD after a full review of the record.  In 1988, the Havasupai Tribe

challenged the Forest Service's approval of the Canyon Mine in this Court.  *Id.*, ¶ 35.
The Court found in favor of the Forest Service on all claims, *Havasupai Tribe v. United States*, 752 F. Supp. 1471 (D. Ariz. 1990), and the Ninth Circuit affirmed, *Havasupai Tribe v. Robertson*, 943 F.2d 32 (9th Cir. 1991).  Surface structures were built and the mine shaft was constructed to a depth of 50 feet, but EFN placed the mine on standby status when uranium prices dropped in 1992.  Doc. 115, ¶ 37.

The Federal Land Policy and Management Act ("FLPMA") authorizes the Secretary of the Interior to withdraw public lands from mining operations.  43 U.S.C. § 1714(a).  On July 21, 2009, the Secretary published notice of his intent "to withdraw approximately 633,547 acres of public lands and 360,002 acres of National Forest System lands for up to 20 years from location and entry under the Mining Law of 1872."  Notice of Proposed Withdrawal, 74 Fed. Reg. 35,887.  Over the next two years, the Department of Interior ("DOI") undertook extensive study and preparation of an EIS and ROD to finalize a permanent withdrawal in the area.  In 2010, the U.S. Geological Survey issued an evaluation of the uranium mining impacts in the proposed withdrawal area.  Doc. 115, ¶ 48.

In September 2011, Energy Fuels Resources Inc. ("Energy Fuels"), which had acquired the Canyon Mine from EFN, informed the Forest Service that it intended to reopen the mine under the original Plan of Operations.[1]  *Id.*, ¶ 50.  In January 2012, DOI withdrew more than 1,000,000 acres from mineral location and entry for 20 years, subject to valid existing mineral rights ("the Withdrawal").  *Id.*, ¶ 54.  Land covered by the Withdrawal included the Canyon Mine.  One month after the Withdrawal, the Forest Service completed an evaluation and concluded that valid existing mineral rights ("VERs") existed for the two claims at Canyon Mine as of the date of the Withdrawal (the "VER Determination").  *Id.*, ¶ 58.  In June 2012, the Forest Service concluded that neither a modification of the 1986 Plan of Operations nor a supplemental EIS under

---

[1] For a time, the mine owner was known as Dennison Mines.  For ease of reference, the Court will simply refer to the mine owner after 2011 as "Energy Fuels."

1    NEPA were required for the Canyon Mine to resume operations. *Id.*, ¶ 62.

2         Plaintiffs brought suit in March 2013, challenging the government's approval of renewed operations at Canyon Mine.  Doc. 1.  On June 13, 2013, Defendants moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and also sought dismissal of certain claims on the basis of res judicata and the statute of limitations.  Doc. 71. Plaintiffs moved to stay consideration of the motion to allow discovery on jurisdictional defenses.  The Court granted the motion to stay and allowed Plaintiffs a "reasonable but limited opportunity to develop additional facts to support their jurisdictional arguments." Doc. 85.  Discovery and briefing on the jurisdictional issues was completed on May 19, 2014.

**II.    Legal Standard.**

         A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)) (citation omitted).

         Defendants' motion has become a factual attack on jurisdiction.  In resolving such an attack, the Court "may review evidence beyond the complaint without converting the motion to dismiss to a motion for summary judgment."  *Safe Air for Everyone*, 373 F.3d at 1039; *see also Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  The Court may not resolve genuine factual disputes if jurisdictional and substantive issues are intertwined.  *See Augustine*, 704 F.2d at 1077; *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Instead, the Court must find that jurisdiction exists and address the motion to dismiss as a motion for summary judgment attacking the merits of Plaintiff's case.  *See Safe Air for Everyone*, 373 F.3d at 1039-40, n.3.  The Court need not presume the truthfulness of Plaintiff's allegations.  *Id.* at 1039 (citing *Savage v. Glendale Union*

1   *High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003), *White*, 227 F.3d at 1242).  Plaintiffs

2   have the burden of establishing subject matter jurisdiction.  *Safe Air for Everyone*, 373

3   F.3d at 1039.

4   **III.   Analysis.**

5           Plaintiffs' claims are brought under the Administrative Procedures Act ("APA").

6   Defendants argue that some of the claims should be dismissed because they do not

7   challenge a "final agency action" as required by § 704 of the APA.  5 U.S.C. § 704.  This

8   includes Plaintiffs' assertion in Claim 1 of the amended complaint that a supplemental

9   EIS should have been performed under NEPA before the VER Determination issued,

10  their assertion in Claim 2 that Defendants failed to comply with § 106 of the National

11  Historic Preservation Act ("NHPA") before completing the VER Determination, and

12  their assertion in Claim 4 that the VER Determination was arbitrary because the Forest

13  Service ignored relevant economic factors.  Doc. 115.[2]

14          **A.   Claims 1 and 4.**

15          Because judicial review under the APA applies only to final agency actions, 5

16  U.S.C. § 704, the Court must decide whether the VER Determination is a final agency

17  action.  There are two components to this inquiry.  First, the Court must decide whether

18  the VER Determination is an "agency action" within the meaning of the APA.   An

19  agency action "includes the whole or a part of an agency rule, order, license, sanction,

20  relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Second,

21  if the VER Determination is an agency action, the Court must decide whether it is a final

22  agency action.  To be considered a final agency action under the APA, the two prongs of

23  the test established in *Bennett v. Spear*, 520 U.S. 154 (1997), must be satisfied.  "First,

24  the action must mark the 'consummation' of the agency's decisionmaking process – it

25  must not be of a merely tentative or interlocutory nature.  Second, the action must be one

26  _____

27  [2] Defendants' motion to dismiss, which was filed before the amended complaint,
    challenged Claims 1, 2, 3, 4, 6, 7, and 8 of the original complaint.  On April 4, 2014,
28  Plaintiffs filed an amended complaint and reduced their claims from eight to four.
    Doc. 115.  The motion to dismiss applies to Claims 1, 2, and 4 of the amended complaint.

by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (citing *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970) (internal quotes omitted)).  The Court will address these requirements in turn.

### 1.      Agency Action.

Plaintiffs argue that the VER Determination is an agency action because it is both a "license" and a "relief" within the statutory definition of "agency action" in the APA. 5 U.S.C. § 551.  They argue that it was legally required under the FLPMA before Canyon Mine could restart in the Withdrawal area.  Doc. 126 at 18-19.  Although Defendants' position was not entirely clear in their briefing, counsel for the government agreed at oral argument that the VER Determination is an agency action.

The Court also agrees.  The VER Determination constituted the Forest Service's conclusion that Energy Fuels had valid existing mineral rights at the Canyon Mine site. This action falls squarely within the APA definition of agency action as including "the whole or a part" of any agency "relief."  5 U.S.C. § 551(13).  "Relief," in turn, is defined as "recognition" of a "claim" or "right."  § 551(11)(B).  The VER Determination constituted the Forest Service's recognition of valid mineral rights and of a valid claim to such rights at the Canyon Mine.  The determination falls within the definition of relief, and therefore within the definition of agency action.

### 2.      *Bennett* Part 1: Consummation.

Plaintiffs contend that the VER Determination constitutes the Forest Service's final decision on the validity of mineral rights at Canyon Mine and therefore satisfies the first prong of the *Bennett* test.  Defendants argue that the determination is not a consummation of the agency's decisionmaking process, but rather a preliminary step, with additional processes required before the Forest Service could revoke or invalidate a Plan of Operations.  Doc. 71 at 21-22; Doc. 123 at 6.  They argue that the final decision on operation of the Canyon Mine was the Plan of Operations and the 1986 ROD.

Doc. 71 at 22-23.

The first part of the *Bennett* test asks whether the action marks the consummation of the agency's decision making process. *Bennett*, 520 U.S. at 177-78. As the Ninth Circuit has explained, "we look to see whether the agency 'has rendered its *last word* on the matter.'" *Oregon Natural Resources Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984 (9th Cir. 2006) (quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001) (emphasis added).

In its order denying a preliminary injunction, the Court found that the VER Determination is the last action the Forest Service can take on the validity of the Canyon Mine claims and therefore satisfies the first requirement of the *Bennett* test. Doc. 86 at 9-10. The Court continues to hold this view. Although it is true that the Forest Service does not have the power to invalidate mineral rights at the Canyon Mine (that responsibility lies with DOI) and that its VER Determination would simply constitute evidence in any proceeding on the legal validity of the mineral rights, the fact remains that the VER Determination is the Forest Service's "last word" on the validity of the Canyon Mine mineral rights. No additional Forest Service action is planned on this issue.

Defendants argue that the Forest Service retains discretion to conduct a VER Determination at any time and that the Bureau of Land Management, a different agency, may conduct its own inquiry into the validity. Doc. 123 at 12. As Plaintiffs note, however, the fact that the Forest Service or some other agency have discretion to take action in the future does not negate the fact that the VER Determination is a final action by the Forest Service. *See Bell v. New Jersey*, 461 U.S. 773, 779-80 (1983); *Alaska v. EPA*, 244 F.3d 748, 750 (9th Cir. 2001) (decision consummated agency process even if agency may adopt new position in response to changed circumstances); *see also U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1013 (D.C. Cir. 2002) ("if the possibility . . . of future revision in fact could make agency action non-final as a matter of law, then it would be hard to imagine when any agency rule . . . would ever be final as a matter of law").

The Court concludes that the first element of the *Bennett* test is satisfied. The

VER Determination was not merely tentative or interlocutory in nature, it was the Forest Service's last word on the validity of mineral rights at the Canyon Mine.  It marked the consummation of the Forest Service's validity determination.

### 3.    *Bennett* Part 2: Legal or Practical Effect.

In its preliminary injunction ruling, the Court found that Plaintiffs were unlikely to satisfy the second prong of the *Bennett* test because the VER Determination did not augment any rights or obligations related to Canyon Mine; it merely recognized rights that existed at the time of the Withdrawal.  Doc. 86 at 12.  Having reviewed factual materials submitted by the parties and having read more cases concerning the second prong of the *Bennett* test, the Court now reaches a different conclusion.

In *Bennett*, the Supreme Court explained that the second prong is satisfied if the action is "one by which rights or obligations have been determined, or from which legal consequences will flow."  520 U.S. at 178 (quotation marks and citation omitted).  Other cases shed light on this requirement.  In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court explained that the "core question" is whether the result of the agency action "is one that will directly affect the parties."  *Id*. at 797.  Although *Franklin* was decided before *Bennett*, the Ninth Circuit quoted this language from *Franklin* in *Oregon Natural Desert Ass'n*.  465 F.3d at 982.  The Ninth Circuit went on to explain that courts should look to whether the agency action "amounts to a definitive statement of the agency's position" or whether it "has a direct and immediate effect on the day-to-day operations of the subject party."  *Id*. (quotation marks and citation omitted).  The Ninth Circuit said the focus should be "on the practical and legal effects of the agency action," and that the finality element must be interpreted "in a pragmatic and flexible manner." *Id.* (quotation marks and citations omitted).

The factual materials presented by the parties show that completion of the VER Determination was, at least, a practical requirement before the Canyon Mine resumed operations.  On September 23, 2011, the Forest Supervisor responsible for the Canyon Mine, Michael Williams, wrote a letter to the executive vice president of Energy Fuels.

1    Mr. Williams explained that '[a] mineral exam is scheduled to determine if your company
2    has valid existing rights for the Canyon Mine location.  *This is a requirement* for any
3    public domain lands managed by the Forest Service that have been withdrawn from
4    mineral entry[.]"  Doc. 126-12 at 1 (emphasis added).

5            In a conference call with the Kaibab Paiute Tribe on January 10, 2012, in which
6    Mr. Williams participated, an employee of the Forest Service explained that "the mineral
7    exam will need to be completed before they start work at the Canyon Mine."  Doc. 118-
8    15 at 1.  The next day, in a telephone conversation with the Hualapai Tribe, Mr. Williams
9    stated that the owners of Canyon Mine "would not be able to move forward without VER
10   under the mineral withdrawal."  Doc. 118-18 at 1.

11           Even more important than these communications, however, are Forest Service's
12   repeated statements in the VER Determination itself that the determination was required
13   for renewed operation of the mine:  "It is Forest Service policy (FSN2803.5) to only
14   allow operations on mining claims within a withdrawal that have valid existing rights
15   (VER)."  Doc.126-3 at 5.  This statement is repeated on the next page.  *Id.* at 6.  Two
16   pages later, the VER Determination states that "[d]ue to the withdrawal, all locatable
17   operations within this area must have valid existing rights (VER) in order to be able to
18   operate on these claims."  *Id*. at 8.

19           As authority for these statements, the VER Determination cites "FSN2803.5,"
20   which is a section in the Forest Service Manual, specifically in "Chapter – Zero Code."
21   Paragraph 5 of section 2803 of the Manual states that the Forest Service should "[e]nsure
22   that valid existing rights have been established before allowing mineral or energy
23   activities in congressionally designated or other withdrawn areas."  FOREST SERVICE,
24   FOREST SERVICE MANUAL, FSM 2800 – MINERALS & GEOLOGY, § 2803 (2012).

25           Other communications make clear that Energy Fuels did not intend to proceed
26   with renewed mine operations until the VER Determination was finished.  A letter from
27   Energy Fuels' executive vice president to Forest Service employees concerning the
28   process of the VER Determination stated:  "We would like to get the sample analysis

1    turned around as early as possible so that we can hopefully close this out and proceed

2    with our production plans."  Doc. 118-16 at 1.  An email from a Forest Service employee

3    to representatives of the Kaibab Paiute Tribe, sent the day after the January 10, 2012

4    conference call mentioned above, contained this statement:  "I called our geologist, and

5    was told that [Energy Fuels] will not be doing any 'shaft sinking' at the site until the

6    mineral exam is completed."  Doc. 126-13 at 1.

7            Whether or not the law required Energy Fuels to wait until the VER Determination

8    was completed, these communications clearly show that the Forest Service, Energy Fuels,

9    and interested tribes all understood that mine operations would not resume until the VER

10   Determination was completed.  It was a practical if not a legal requirement.  And as noted

11   above, the Ninth Circuit has instructed that courts should "focus on the practical and legal

12   effects of the agency action."  *Oregon Natural Desert Ass'n*, 456 F.3d at 982.   The

13   Supreme Court's direction that the "core question" is "whether the result of that process

14   is one that will directly affect the parties," *Franklin*, 505 U.S. at 797, is also relevant.

15   The documents quoted above make clear that the VER Determination directly affected

16   the parties – Canyon Mine operations would not resume until the determination was

17   completed.[3]

18           The difficult question for the Court is whether a practical effect alone is sufficient

19   to satisfy the second prong of the *Bennett* test.   *Bennett* itself seems to require legal

20   consequences, referring to actions "by which rights or obligations have been determined,

21   or from which legal consequences will flow," 520 U.S. at 178, and most cases discussing

22   this prong focus on the legal effects of an agency action.  Plaintiffs have identified little

23   legal effect from the VER Determination – it does not create mineral rights, but merely

24

25

26   [3] In an affidavit submitted with the preliminary injunction briefing, the executive
     vice president of Energy Fuels states that the Forest Service asked Energy Fuels to hold
27   off on resuming mining activities "on a voluntary basis" until the VER Determination
     was completed, and that Energy Fuels voluntarily agreed.  Doc. 59 ¶¶ 15-16.  Accepting
28   this statement as true, the Court nonetheless concludes that the practical effect of the
     VER Determination was to forestall new operations at the mine until the determination
     was finished.

confirms they already exist; it is not required by the FLPMA or the Withdrawal,[4] although the Forest Service Manual does seem to suggest that it is necessary before mining operations may occur on withdrawn lands; and Plaintiffs have identified no specific *legal* consequences that flow from the determination itself.  And yet the Ninth Circuit clearly states that the Court should take not only a legal, but also a "practical" and "pragmatic" look at the VER Determination.  *Oregon Natural Desert Ass'n,* 465 F.3d at 982.  Other cases agree.  *See*, *e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("Finality resulting from the practical effect of an ostensibly non-binding agency proclamation is a concept we have recognized in the past."); *Gen. Elec. Co. v. Envt'l Prot. Agency*, 290 F.3d 377, 383 (D.C.Cir.2002) ("if the language of the document is such that private parties can rely on it as a norm or safe harbor by which to shape their actions, it can be binding as a practical matter").  Viewing the VER Determination from a practical point of view, the Court finds that it not only "amounts to a definitive statement of the agency's position" on the validity of the Canyon Mine mineral rights, but that it also had "a direct and immediate effect on the day-to-day operations of the subject party" – once issued, it allowed mining operations to resume under the original Plan of Operations.  *Id.*  The Court therefore concludes that the VER Determination satisfies the second prong of the *Bennett* test.

This conclusion is reinforced by the fact that the VER Determination seems to fall within the actual language of *Bennett*.  One of the circumstances identified by *Bennett* as satisfying the second prong is when "rights or obligations have been determined."  520 U.S. at 178.  The purpose of the VER Determination was to determine rights – the existence of valid mineral rights at the Canyon Mine site.  The VER Determination thus appears to come within the express language of *Bennett*.

---

[4] Plaintiffs cite to language in the FLPMA and the Withdrawal stating that the Withdrawal is subject to "valid existing rights."  *See, e.g.*, Doc. 126 at 22 (citing Doc. 126-3 at 8; 43 U.S.C. § 1702(j)).  But there is a difference between valid existing rights and a valid existing rights determination, and neither the statute nor the Withdrawal requires a determination.

1

**4.      Conclusion for Claims 1 and 4.**

The Court concludes that the VER Determination is an agency action that satisfies both prongs of the *Bennett* test.  As a result, it is a final agency action within the meaning of 5 U.S.C. § 704, and the Court has jurisdiction to review Claims 1 and 4.

**B.      Claim 2.**

Claim 2 asserts that Defendants failed to comply with § 106 of the NHPA before completing the VER Determination.  Section 106 provides:

> The head of any . . . Federal department or independent agency having authority to license any *undertaking* shall, prior to the *approval* of the expenditure of any Federal funds on the undertaking or prior to the issuance of any *license*, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.

16 U.S.C. § 470f (emphasis added).   Plaintiffs argue that the Canyon Mine is an "undertaking" and that the VER Determination is an "approval" or "license" within the meaning of this section.  As a result, Plaintiffs contend, the Forest Service was obligated to comply with this section before completing the VER Determination.

Several issues are raised by this claim:   (1) whether the Canyon Mine is a "undertaking" within the meaning of § 106; (2) whether the VER Determination constitutes an "approval" or "license" within the meaning of the section; (3) whether consultation under this section would constitute a "final agency action," the omission of which can be reviewed by a court under the APA; and (4) whether the claim is barred by res judicata, the statute of limitations, or laches.

**1.      Undertaking, Approval, or License.**

In the Court's view, the parties' briefing does not fully and clearly address whether the Canyon Mine is an undertaking for purposes of § 106 or whether the VER Determination is an approval or license within the meaning of this section.  In addition, these issues are closely related to the merits of Claim 2.  The Court accordingly will defer

1    consideration of these issues until the merits phase of this case.

2                    **2.      Final Agency Action.**

3           The "final agency action" requirement of § 704 of the APA applies whether a

4    plaintiff seeks to "compel agency action unlawfully withheld or unreasonably delayed"

5    under § 706(1) or to "hold unlawful and set aside agency action" under § 706(2).  The

6    claim asserted in Claim 2 is the former – a failure to act claim under § 706(1).  Doc. 115,

7    ¶ 83.[5]  In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("*SUWA*"),

8    the Supreme Court held that such a claim "can proceed only where a plaintiff asserts that

9    an agency failed to take a *discrete* agency action that it is *required to take*."  *Id.* at 64

10   (emphasis in original).  *SUWA* focused on what constituted a *discrete* agency action that

11   could be compelled under §706(1) of the APA, but also recognized that "[w]here no other

12   statute provides a private right of action, the "agency action" complained of must be

13   "*final* agency action."  *Id.* at 62-63 (emphasis in original).

14          The omitted action in Claim 2 is not the VER Determination, but the Forest

15   Service's alleged failure to engage in the consultation process required by § 106 of the

16   NHPA.  Plaintiffs can assert this claim under the APA only if consultation under § 106

17   would have been a final agency action.  *Id.*

18          While the parties have not identified and the Court has not found any authority

19   explicitly addressing whether compliance with § 106 is itself a final agency action, the

20   Ninth Circuit has reviewed agency compliance with the § 106 consultation requirement in

21   the past.  *See, e.g.*, *Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of Interior*,

22   608 F.3d 592, 607-10 (9th Cir. 2010); *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177

23   F.3d 800, 805-807 (9th Cir. 1999).  Additionally, Plaintiffs asserted at oral argument that

24   the result of a § 106 consultation likely would have been a memorandum of agreement

25   ("MOA") that clearly would have legally binding effect.

26          The statute's regulations support this assertion.  They suggest that an agency

27   _____

28          [5] Although the amended complaint is not entirely clear on this point, counsel
     confirmed during oral argument that Claim 2 asserts only a failure to act claim based on
     noncompliance with § 106 of the NHPA.

should complete an MOA to show compliance with § 106 whenever adverse effects on properties are found.  *See* 36 C.F.R. § 800.6(a) (requiring consultation with Indian tribes to develop and evaluate alternatives to avoid, minimize, or mitigate adverse effects on historic properties); § 800.6(c) (noting that an MOA evidences compliance with § 106). They also show that an MOA has legal force – parties to an MOA must comply with its terms.  § 800.6(c).  Indeed, in *Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000), the Ninth Circuit held that an MOA between an agency and city, which resulted from a § 106 consultation, was legally binding and enforceable by third-party beneficiary homeowners.

It appears that not every § 106 consultation results in an MOA.  The regulations imply that an MOA is required only when the agency's consultation identifies potential adverse effects on historic properties.  The fact that consultation might not produce an MOA does not, however, alter the conclusion that § 106 consultation qualifies for judicial review.  In *Vieux Carre Prop. Owners, Residents & Assoc., Inc. v. Brown*, 948 F.2d 1436, 1445 (5th Cir. 1991), the Fifth Circuit reviewed an agency's obligation to consult under § 106 for a project that was almost complete.  Although the result of consultation under § 106 was unknown, and the process might not have resulted in issuance of an MOA, the court held that "as long as the park project is under federal license and the Corps has the ability to require changes that could conceivably mitigate any adverse impact . . . NHPA review is required."  *Id*. at 1445.  Other cases likewise "require that NHPA be applied to ongoing Federal actions as long as a Federal agency has opportunity to exercise authority at any stage of an undertaking where alterations might be made to modify its impact on historic preservation goals."  *Id*. at 1444-45 (citing *Morris County Trust for Historic Pres. v. Pierce,* 714 F.2d 271, 280 (3rd Cir.1983); *Waterbury Action to Conserve Our Heritage, Inc. v. Harris,* 603 F.2d 310, (2d Cir.); *Thompson v. Fugate,* 347 F.Supp. 120, 124 (E.D.Va.1972)).

Consultation with Plaintiff Havasupai Tribe in this case might well have resulted in a legally enforceable MOA.  The Court concludes that such a consultation would be a final agency action under the two prongs of *Bennett*: (1) completion of the consultation

1    would constitute the culmination of the agency's action under the NHPA with respect to
2    the Canyon Mine, and (2) the process could produce an MOA with legally enforceable
3    effects.  *See Bennett*, 520 U.S. at 177-78.

4         Because the Court finds that a § 106 consultation would qualify as a final agency
5    action, the Court concludes that Plaintiffs may use the APA to challenge the Forest
6    Service's failure to conduct the consultation.  5 U.S.C. § 706(1).

7                    **3.      Res Judicata.**

8         Federal Defendants argue that Claim 2 is barred by res judicata because it alleges
9    essentially the same NHPA cause of action that Plaintiffs 'might' have pursued" in their
10   prior litigation challenging the 1986 ROD.  Doc. 71 at 24 (citing *Havasupai Tribe*, 752 F.
11   Supp. 1471).  "The doctrine of *res judicata* provides that 'a final judgment on the merits
12   bars further claims by parties or their privies based on the same cause of action.'"  *In re*
13   *Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States,* 440
14   U.S. 147, 153 (1979)).  Thus, res judicata applies whenever there is (1) an identity of
15   claims, (2) a final judgment on the merits, and (3) privity between parties.  *Tahoe-Sierra*
16   *Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir.
17   2003).

18        Defendants argue that the "identity of claims" requirement is satisfied because
19   Claim 2 is "essentially the same" as claims asserted in the earlier action.  Doc. 71 at 24.
20   But the earlier claims challenged approval of the 1986 Plan of Operations for violating
21   the Tribe's right to free exercise of religion and a consultative duty under NEPA.
22   *Havasupai Tribe*, 752 F. Supp. 1471.  Claim 2 asserts a failure to comply with § 106 of
23   the NHPA for a cultural property that was not designated a TCP until 2010.  That
24   designation had not occurred at the time of the prior suit and could not have been the
25   subject of a § 106 claim.  Thus, Claim 2 is not the same as the claims brought in the
26   earlier action, nor could it have been brought in that action.  Because there is no identity
27   of claims between the prior case and Claim 2, res judicata does not apply.

28

1

### 4.     Statute of Limitations and Laches.

2        Defendants argue that Claim 2 is barred by the statute of limitations and laches

3  because the 1986 ROD is the only agency decision that authorized mining at Canyon

4  Mine, and any claims challenging continued mining should have been brought within six

5  years of the ROD.  Doc. 71 at 24-25 (citing 28 U.S.C. § 2401(a)).  But Claim 2 asserts

6  that the VER Determination triggered the agency's obligations under § 106 of the NHPA,

7  and the statute of limitations would not have begun to run for this claim until the VER

8  Determination was issued in 2012 or the Forest Service failed to engage in § 106

9  consultation as part of that determination.  Because those events occurred well within the

10  six-year limitations period in 28 U.S.C. § 2401(a), Claim 2 is not barred by the statute of

11  limitations.  For the same reason, it is not barred by the doctrine of laches.

12        **IT IS ORDERED** that Defendants' partial motion to dismiss (Doc. 71) is **denied**.

13        Dated this 7th day of August, 2014.

14

15

16

17  _____

18          David G. Campbell
         United States District Judge

19

20

21

22

23

24

25

26

27

28