**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grand Canyon Trust, et al., | No. CV-13-08045-PCT-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Michael Williams, et al., | |
| Defendants. | |

Plaintiffs have filed separate motions asking the Court to issue an injunction pending appeal. Docs. 169, 177. Plaintiffs also seek an expedited ruling. *Id.* No party has requested oral argument. The motions are fully briefed. For the reasons that follow, the Court will enter this expedited order and deny the motions.

**I.    Background.**

Plaintiffs Havasupai Tribe, Grand Canyon Trust, Center for Biological Diversity, and the Sierra Club brought suit against Defendants United States Forest Service and Michael Williams, Supervisor of the Kaibab National Forest (the "Forest Service"), challenging mining operations at the Canyon Mine under the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA"). Canyon Mine is owned and operated by Energy Fuels Resources (USA), Inc. and EFR Arizona Strip, LLC (collectively, "Energy Fuels").

On April 7, 2015, the Court denied Plaintiffs' motion for summary judgment and granted Defendants' motions for summary judgment on all claims. Doc. 166. Plaintiffs

1 have appealed that decision, and now seek an injunction to prohibit mining while the
2 appeal is pending.

3 **II.     Legal Standard.**

4 "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for evaluating injunctions pending appeal is the same as the standard for evaluating preliminary injunctions. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). The movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of . . . relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, if the movant "can only show that there are 'serious questions going to the merits' – a lesser showing than the likelihood of success on the merits – then [an] injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) (emphasis in original).

18 **III.    Analysis.**

19 The Court notes that it has already denied a request for a preliminary injunction in this case. Doc. 86. Plaintiffs nonetheless argue that they are likely to succeed on the merits of their appeal or, alternatively, that they have raised serious questions on each of their claims. Plaintiffs argue that mining will cause irreparable harm and that the balance of hardships tips sharply in their favor. Defendants dispute these claims.

24 **A.     Likelihood of Success and Serious Questions.**

25 The likelihood of success standard is easily understood. "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d

738, 740 (2d Cir. 1952)). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a '*fair chance of success* on the merits.'" *Id.* (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)) (emphasis added). The question for the Court to decide, therefore, is whether Plaintiffs have shown either a likelihood of success or a fair chance of success on the merits of their appeal.

Plaintiffs' claims are brought under the Administrative Procedure Act ("APA"), which requires a plaintiff challenging an agency action to show that the action was arbitrary and capricious or not in accordance with the law. "This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)).

### 1. Claim One.

Before approving the Plan of Operations for the Canyon Mine in 1986, the Forest Service completed a full NEPA Environmental Impact Statement ("EIS"). A.R. 461-693. On September 26, 1986, the Forest Service issued a Record of Decision ("ROD") approving a Plan of Operations for the Canyon Mine. A.R. 915-29. Administrative appeals followed (A.R. 3932), and the Deputy Regional Forester and Chief of the Forest Service both affirmed the ROD.

The Havasupai Tribe filed a lawsuit challenging approval of the Canyon Mine. *See Havasupai Tribe v. United States*, 752 F. Supp. 1471 (D. Ariz. 1990). Among other arguments, the tribe claimed that the EIS failed to comply with NEPA. The district court granted summary judgment to the Forest Service, *id.* at 1489-1505, and the Ninth Circuit affirmed, *see Havasupai Tribe v. United States*, 943 F.2d 32 (9th Cir. 1991).

Claim one in this case alleged, nonetheless, that the VER Determination recently conducted by the Forest Service constituted a new "major federal action" and required an entirely new NEPA EIS for the Canyon Mine. The Court disagreed, finding that the VER

1  Determination was not a major federal action because it was not a "required approval" for
2  operations to continue at the mine. Doc. 166 at 24-27. The Court further found that
3  NEPA obligations were not triggered by the "mere continued operation of a NEPA-
4  approved facility." *Id.* at 27. The Court relied, among other cases, on *Center for*
5  *Biological Diversity v. Salazar ("CBD")*, 791 F. Supp. 2d 687 (D. Ariz. 2011), *aff'd*, 706
6  F.3d 1086 (9th Cir. 2013). Doc. 166 at 22-27.

In *CBD*, this Court and the Ninth Circuit found that a mining plan of operations approved in 1988, with full NEPA review, did not require additional NEPA review when the operator sought to resume mining nearly 20 years later. *CBD*, 791 F. Supp. 2d at 704. The only distinguishing fact between this case and *CBD* is that the land on which the Canyon Mine is located has been withdrawn by the Department of the Interior ("DOI") from the further location of mining claims (the "Withdrawal"). The Court found in its summary judgment ruling, however, that the Withdrawal did not require completion of a VER Determination before operations could continue. Indeed, the Withdrawal specifically contemplated that the Canyon Mine would continue operating. A.R. 10314.

As the Court noted in its order, there is a difference between valid existing rights and a valid existing rights determination, and neither the Withdrawal nor the Federal Land Policy and Management Act ("FLPMA") requires a VER Determination. Doc. 166 at 10. The fact that the Withdrawal was "subject to valid existing rights" meant only that it did not extinguish valid rights in existence at the time of the Withdrawal; it said nothing about when or how a review of those rights must occur. When the Withdrawal did address the requirement of VER Determinations, it said they would be required only for "new" Plans of Operations, not existing plans. A.R. 10314-15. The Court carefully reviewed the relevant BLM and Forest Service regulations and guidance documents and found no support for Plaintiffs' contention that a VER Determination was required before mining operations could resume under the previously-approved Plan. Doc. 166 at 7-11.

Plaintiffs could not then, and still cannot, point to any statute, regulation, guidance document, or case that requires a VER Determination for a previously-approved plan of

1  operations on withdrawn land.  Thus, the Forest Service reasonably found that no new
2  major federal action had occurred, and its failure to conduct a new EIS was not arbitrary
3  and capricious.  Plaintiffs have not shown either a likelihood of success or a fair chance
4  of success on claim one.

### 2.   Claims Two and Three.

6  Claim two alleged that the Forest Service was required to complete full
7  consultation under NHPA § 106.  Claim three alleged that the Forest Service erroneously
8  applied the § 106 consultation process set forth in 36 C.F.R. § 800.13(b)(3).  The Court
9  found that the VER Determination was not a permit, license, or approval, and that
10 resumption of mining was therefore not an "undertaking" sufficient to trigger full § 106
11 consultation under the NHPA.  Doc. 166 at 28-29.  The Court further found that the
12 Forest Service's decision to apply § 800.13(b)(3) was plainly reasonable in light of the
13 clear language of the regulation and the unique situation in this case.  *Id.* at 30-41.

14 Plaintiff Havasupai Tribe simply reasserts the arguments made in the summary
15 judgment briefing and argues that they raise serious questions.  Doc. 170 at 5-6.  The
16 Court had little difficulty with these arguments in its summary judgment ruling and does
17 not find them more persuasive now.  Rather than repeat its reasoning here, the Court
18 refers the reader to pages 27-41 of the summary judgment ruling (Doc. 166).  Those
19 pages explain in detail why claims two and three do not succeed on their merits and do
20 not present a fair chance for success on appeal.

### 3.   Claim Four.

22 Claim four challenged the substance of the VER Determination.  The Court found,
23 however, that Plaintiffs could not assert this claim because their interests did not fall
24 within the "zone of interests" Congress sought to protect in the Mining Law of 1872.
25 Doc. 166 at 20.  The Court noted that the "obvious purpose" of the Mining Law "is to
26 protect economic interests in mineral deposits, not the environmental or historical
27 interests held by Plaintiffs."  *Id.* at 19.  The Court relied on the Supreme Court's finding
28 that the Mining Law's "obvious intent was to reward and encourage the discovery of

minerals that are valuable in an economic sense." *United States v. Coleman*, 390 U.S. 599, 602 (1968). Because claim four essentially challenged Energy Fuels' rights to the uranium beneath Canyon Mine and Plaintiffs did not assert a competing interest in the minerals, Plaintiffs were unable to use the Mining Law to protect their environmental interests. The Court noted that to hold otherwise would give environmental plaintiffs the right to challenge every governmental verification of private mineral rights, which would undermine the obvious purpose of the statute. Doc. 166 at 18. Plaintiffs present no arguments that seriously undermine the Court's interpretation of the Mining Law or their lack of interests under that law.

Plaintiffs focus heavily on the FLPMA, asserting that they fall within its broad statutory zone of interests. As the Court previously noted, however, the sections of the FLPMA to which Plaintiffs cite are not related to VER Determinations or mineral examinations. Doc. 166 at 19 n. 8. They deal with the DOI's authority to withdraw land, and do not provide the Court with any relevant law to apply in deciding claim four. *Id.* Whether Plaintiffs may assert claim four "is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v, Spear*, 520 U.S. 1154, 1175-76 (1997); *see also Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) (quoting *Bennett*); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004) (the court must "look 'to the substantive provisions of the [statutes], the alleged violations of which serve as the gravamen of the complaint'") (quoting *Bennett*, 520 U.S. at 175). Because the FLPMA sections cited by Plaintiffs do not provide the law to be applied in claim four, those sections do not establish Plaintiff's right to bring that claim.

Plaintiffs have not shown either a likelihood of success or a fair chance of success on claim four.

### B.     Balance of Hardships.

Even if Plaintiffs could show serious questions going to the merits of their claims, they have failed to show that the balance of hardships tips *sharply* in their favor. *See*

- 6 -

*Shell Offshore*, 709 F.3d at 1291. Plaintiffs argue that they will suffer irreparable injuries, including religious and cultural damage, groundwater contamination, and other irreversible environmental impacts. Energy Fuels argues that an injunction would force it to shut down active mining operations, which would cost at least $945,000, force it to lay off employees, and cause it to default on contractual obligations. It also asserts that mining has already been delayed for several years because of this lawsuit. "Both the economic and environmental interests are relevant factors, and both carry weight in this analysis." *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014).

The Court has previously addressed the balance of hardships in this case. In ruling on Plaintiffs' request for a preliminary injunction, the Court explained:

> The Court notes . . . that Plaintiffs significantly delayed seeking injunctive relief. The Forest Service issued a press release announcing that it had completed the Mine Review on June 25, 2012. A.R. 10638-39. On the same day, the Forest Service notified Plaintiffs Center for Biological Diversity and Havasupai Tribe of its Mine Review decision. A.R. 10642, 10690-91. Plaintiffs did not file suit until March 7, 2013 (Doc. 1), and did not seek a preliminary injunction until April 24, 2013 (Doc. 36). This unexplained ten-month delay in seeking injunctive relief "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).
>
> * * *
>
> The harm identified by each side of this litigation is serious. Potential injuries to Plaintiffs are procedural, religious, and aesthetic, while potential injuries to Defendants are financial. Although persons can differ on the respective importance of these kinds of injuries, the question is not which side's potential injury is greater, but whether the balance of hardships "tips sharply" in Plaintiff's favor. *Alliance for the Wild Rockies*, 632 F.3d at 1131. Given the significant financial losses that might be caused to Defendant-Intervenors by an injunction, as well as Plaintiffs' delay in seeking injunctive relief, the Court cannot conclude that the balance tips "sharply" in Plaintiffs' favor. As a result, Plaintiffs cannot obtain a preliminary injunction by raising serious questions; they must show a likelihood of success on the merits.

Doc. 86 at 5-7.

In their current motion, Plaintiffs emphasize potential injuries to the environment. They assert that mining will "degrade important regional springs" and "elevated uranium concentrations" will contaminate groundwater.  Doc. 177 at 15.  The EIS for the Canyon Mine, however, explained that Energy Fuels did not propose operating at the depth of the Redwall-Muav aquifer mentioned in Plaintiffs' evidence, and that the Forest Service expected no effect on the springs the aquifer feeds.  A.R. 773; *see* Doc. 53-5, Decl. of Roger D. Congdon ¶ 5.  The 2012 Mine Review reconsidered this analysis and found "no new information or changed circumstance related to ground water that would indicate the original analysis is insufficient."  A.R. 10624.  The EIS for the DOI Withdrawal found that the Canyon Mine "is not located within the protective buffer area calculated for a perched aquifer spring."  A.R. 9528-21.  Indeed, the Canyon Mine is located where any seepage would flow away from Grand Canyon springs.  A.R. 9502; Congdon Decl. ¶¶ 6, 8, 10.

Evidence cited by Plaintiffs suggests only a small likelihood of harm.  *See* Doc. 19-2 at 23-24 (letter from a hydrogeologist opining that "although there is *a lot of uncertainty* in our understanding of flow . . . and how it is connected to mineralization in these breccia pipes, . . . there is *potential* harm" to the regional aquifers) (emphasis added); Doc. 63-1, ¶¶ 4, 7, 14-18 (affidavit from a hydrologist stating that there is a "high likelihood" that the mineshaft will pierce and drain the perched aquifer, but at the same time noting that "significant amounts of water *could* be lost and rerouted by piercing the perched aquifers during mining operations") (emphasis added).  Moreover, in connection with the Withdrawal, BLM concluded that there was only a "low potential for major adverse effects" to groundwater.  *See Yount v. Salazar*, No. CV-12-8038-PCT-DGC, 2014 WL 4904423, at *12-13 (D. Ariz. Sept. 30, 2014) (noting that BLM found a "low probability of groundwater contamination" and a "low potential for major adverse effects").  The evidence fails to persuade the Court that these small risks tip the balance

of hardships sharply in favor of Plaintiffs.[1]

In addition, the Tribe fails to persuade the Court that its religious and cultural harms greatly outweigh those of Energy Fuels. As noted above, Plaintiffs waited more than ten months before filing this lawsuit and seeking preliminary injunctive relief. In addition, as the Federal Defendants note, the Tribe has declined to engage in NHPA consultation for more than two years. The Forest Service acted reasonably "by providing immediate notice of its decision [that §800.13(b)(3) applies], initiating consultation with tribes" over the impacts of mining on Red Butte, and "planning and attending meetings to discuss cultural and environmental impacts over several months." Doc. 166 at 41. "Had this lawsuit not intervened, the Forest Service and the tribes might well have executed a memorandum of agreement regarding appropriate ways to minimize effects on Red Butte." *Id.* Equity is not served when the Tribe refuses to consult with the Forest Service about protecting its religious interests and then seeks an injunction to protect those same interests on the ground that the Forest Service has failed to consult. *See Apache Survival Coal. v. United States*, 21 F.3d 895, 907 (9th Cir. 1994) (applying laches when "the [San Carlos Apache] Tribe ignored the *very process* that its members now contend was inadequate") (emphasis in original).

The Tribe has submitted declarations by Havasupai elders stating that the "past mining activities have 'wounded' the sacred site, and that future significant impacts could 'kill' the sacred site, and by extension, the religion of the Havasupai people." Doc. 39 at 27. The Court does not take these declarations lightly, but they provide little basis upon which the Court can conclude that continued operations at the Canyon Mine – as opposed to the substantial operations that have occurred at the site to date – will tip the balance of

---

[1] The undersigned judge upheld the Withdrawal in the face of challenges by mining groups and similar interests. *Yount*, 2014 WL 4904423, at *27. The Court did not base this holding on the fact that uranium mining would in fact harm the Grand Canyon, but instead on DOI's substantial discretion to protect a national treasure like the Grand Canyon in the face of uncertainty. *Id.* This case presents a different question – whether Plaintiffs have provided evidence showing that the balance of hardships tips so strongly in their favor that the Court should enjoin mining activities subjected to full NEPA review and approved by the Forest Service. The Court finds that Plaintiffs have not carried that burden.

hardships sharply in the Tribe's favor.  This Court and the Ninth Circuit previously held that the Canyon Mine has not denied the Tribe access to its religious sites or prevented Tribe members from practicing their religion.  *See Havasupai Tribe*, 752 F. Supp. at 1486, *aff'd*, 943 F.2d 32 (9th Cir. 1991).   While the Court recognizes the potential religious impacts that mining may cause, it cannot conclude that these harms – which the Tribe has not sought to protect through consultation with the Forest Service – greatly outweigh the harms alleged by Energy Fuels.

### C. Conclusion.

Plaintiffs have failed to show serious questions on the merits of their claims or that the balance of hardships tips sharply in their favor.  Accordingly, the Court will not grant an injunction pending appeal.  *See Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

**IT IS ORDERED** that Plaintiffs' motions for an injunction pending appeal (Docs. 169, 177) are **denied**.

Dated this 26th day of May, 2015.

_____
David G. Campbell
United States District Judge